UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
MICHAEL J. MOORE and                )
    ROSE MOORE,                     )
            Plaintiffs,             )
                                    )
        v.                          )        No. 1:20-cv-00466-MSM-LDA
                                    )
CRANE COMPANY, et al.,              )
            Defendants.             )
_____)

# MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

## I. INTRODUCTION

This lawsuit concerns the allegation by plaintiffs Michael J. Moore and his wife, Rose Moore, that while he was working as an electronics technician for Electric Boat Corporation on a project for the United States Navy, he was exposed to asbestos which caused him to develop lung cancer. The theory of liability that concerns the Court is his contention that Electric Boat failed to warn him adequately of the dangers of asbestos, despite both a duty to warn[1] and knowledge of the toxicity and risk of exposure. He specifically maintains that Electric Boat owned and controlled

---

[1] "Where there is a hidden danger in the premises where work is to be done by an independent contractor of which the owner or occupant has knowledge or by the use of due care would have knowledge and of which the servants of the contractor have no knowledge, the owner or occupier is under a duty to the servants of the contractor to warn them of the hidden danger in the premises over which he has retained control." *Vandal v. Conrad Mfg. Co.*, 138 A.2d 816, 818 (R.I. 1958). *See also Dent v. PRRC, Inc.*, 184 A.3d 649, 654 (R.I. 2018) (discussion of common law premises liability).

the premises at which he worked and, exacerbated because the products and machinery that he handled were themselves inadequately labeled, Electric Boat failed to warn of the dangers in the workplace itself. *See* Complaint (ECF No. 1, Claim VI, alleging "premises liability," which is specific to Electric Boat).

## II. BACKGROUND

Mr. Moore worked on various construction projects for a number of employers during a long career as an electronics technician. Most, if not all, of his work involved the fabrication and maintenance of Navy vessels, work that was contracted out to private companies including Electric Boat. Electric Boat itself is a Division of General Dynamics, in Groton, Connecticut. Mr. Moore is a resident of West Virginia. The Complaint alleges that each defendant conducted business in Rhode Island and that the injury occurred in Rhode Island. In particular, Mr. Moore and his wife allege that he was exposed to asbestos while working on the construction of the *USS Francis Scott Key* from 1965 to 1969 and on the *USS Bolivar* for about five years after that.

Mr. Moore filed the Complaint in the Superior Court of Rhode Island. Electric Boat[2] invoked the Federal Officer and Agency Act (28 U.S.C. §§ 1441, 1442 and 1446) to remove the action to this Court. (ECF No. 1-2.) The plaintiff has moved to remand, alleging that Electric Boat does not meet the criteria for removal under § 1442(a)(1) and that as a result the Court lacks subject-matter jurisdiction. The Court agrees

---

[2] Unlike other instances of removal, a single defendant may accomplish removal under the Federal Officer and Agency Act, no matter if the other defendants consent. *Sether v. Agco Corp.*, Civil No. 07-809-GPM, 2008 WL 1701172, at *1 (S.D. Ill. Mar. 28, 2008); *Freiberg v. Swinerton & Walbert Prop. Serv., Inc.*, 245 F. Supp. 2d 1144, 1148 (D. Colo. 2002).

and, by this Order, GRANTS the Motion to Remand (ECF No. 15) and remits the case to the Superior Court of Rhode Island.

### III. LEGAL STANDARD

The statute at issue, 28 U.S.C. § 1442, the Federal Officers and Agencies Act, permits the exercise of federal jurisdiction when neither diversity jurisdiction nor a federal question would warrant the transfer of a case from state to federal court. Its purpose is to provide the protection of the federal courts in any lawsuit whenever "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States [is sued] for or relating to any act under color of such office …." 28 U.S.C. § 1442(a)(2). The critical phrases "any person acting under that officer" and "any act under color of such office" are intended to extend the protection of the federal courts to those who essentially stand in the shoes of federal officers or agencies. The dispute between the plaintiff and Electric Boat relates to the applicability of those phrases to the fact situation alleged and, in turn, whether Electric Boat is thus entitled to come under the umbrella of the Act.

The Act is to be read expansively when determining the entitlement to federal jurisdiction of a federal officer or agency, but it is to be "read narrowly where … only the liability of a private company purportedly acting at the direction of a federal officer is at issue." *Weese v. Union Carbide Corp.,* Civil No. 07-581-GPM, 2007 WL 2908014, at *3 (S.D. Ill. Oct. 3, 2007).[3] Here, the latter governs, as Electric Boat is a

---

[3] The defendants stress the language of *Jefferson County, Alabama v. Acker*, 527 U.S. 423, 432 (1999), but *Acker* involved an action brought to collect taxes from two federal judges. The principle of *Acker* (that the defendants rely on) that federal officials

private company wanting to ride the coattails of the United States Navy–through whose contract it worked–into the federal courthouse. As a private company, Electric Boat bears a "special burden of establishing the official nature of its activities." *Freiberg v. Swinerton & Wahlberg Prop Serv., Inc.,* 245 F. Supp. 2d 1144, 1150 (D. Colo. 2002). If a motion to remand revisits the original demand for removal, removal statutes are strictly construed against removal. *Overly v. Raybestos-Manhattan,* No. C–96–2853 SI, 1996 WL 53215, at *2 (N.D. Cal. Sept. 9, 1996). *See Freiberg,* 245 F. Supp. 2d at 1152, n.6 ("Given the purpose of § 1442 and its basis in a mistrust of states and state courts to protect federal interests, I agree it should be read expansively only when the immunity of individual federal officials, and not government contractors, is at issue.").[4]

## IV. DISCUSSION

### A. Criteria of Federal Officer Act Jurisdiction: "Under Color of" and Nexus

Electric Boat, as the party seeking the protection of § 1442(a) must satisfy two criteria by detailed, not conclusory, evidence. It must first show that it was acting

---

themselves are entitled to a liberal reading came in the context of why only a "colorable" defense, and not a "winning" defense, is required to support removal. In addition, *Acker* was not concerned with the shielding of private companies from the exercise of state jurisdiction.

[4] For similar sentiments, analyzing removal given the original purpose of the Act, *see* discussion by then-District Judge Nancy Gertner in *Holdren v. Buffalo Pumps, Inc.,* 614 F. Supp. 2d 129, 136 (D. Mass. 2009), suggesting that private companies sued often by plaintiffs in the same state, "hardly face the same kind of state-court bias with which the federal officer removal statute was originally concerned," and for that reason they stand "several degrees distant from the paradigmatic federal officer protected by 28 U.S.C. § 1442(a)(1)."

"under color" of a federal official or agency, in this case the U.S. Department of the Navy. Second, it must show a causal link between the "acting under" restrictions and the cause of plaintiff's injury.[5] In common sense terms, protection under the Federal Officer Act requires an entity to demonstrate that (a) it had no choice under tight control exercised by the government but to do what it did; and (b) its compliance with that tight control was what caused the injury.

"Acting under" means more than acting under the general auspices or supervision of a federal agency. *Freiberg,* 245 F. Supp. 2d at 1152; *Overly,* 1996 WL 53215, at *3 (N.D. Cal. Sept. 9, 1996) (showing must be more than just "general auspices").

Because § 1442 allows a private company to find sanctuary in federal court behind the shield protecting federal officers and agencies from state interference, the private entity must essentially show that it had no discretion but to follow the direction of the federal government in doing what it did. In cases involving offending products, or manufacturing processes or defects in construction, that burden is ordinarily met by a showing that the agency's specifications on work performed were so detailed that they left no room for deviation. Thus, in cases alleging toxic exposure to Agent Orange because of the trace dioxin released in its manufacture, private

---

[5] There is a third criterion which has generally not proven an obstacle in similar litigation. Electric Boat must also show that it has a "colorable defense" to the action. That burden is low; there is no requirement that the defense be "winning," but merely that it be "colorable." *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 401 (5th Cir. 1998). Because the Court finds that Electric Boat has failed to sustain its burden otherwise, it need not decide whether Electric Boat would have a "colorable defense" here.

companies have relied on the government's detailed instructions as to the precise composition of the substance. *E.g., Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 399-400 (5th Cir. 1998) (upholding removal).

A failure to warn case, as this is, is different in kind from a case alleging negligent construction or a dangerous product. In a failure to warn case, the defendant must show that the government agency so controlled the relevant *warnings labels* as to preclude the private agency from complying with its state duty to warn. "In the context of a claim of failure to warn such as is asserted against G[eneral] E[lectric] in this case, the removing defendant must establish that the government's control over warnings directly interfered with the defendant's ability to fulfill its state law obligation to warn of safety hazards." *Sether,* 2008 WL 1701172, at *2.

In practical effect, a court's attention may be directed at *two* focal points of warnings: first, there may be warnings or an opportunity for warnings on the *physical objects* that the plaintiff was handling or constructing. In many asbestos exposure cases, the asbestos is an integral part of a product supplied by one or more private defendants, often under detailed, and sometimes rigid, specifications. In those cases, a typical defendant response is that the Navy so tightly controlled every word on the labeling of every item that no asbestos danger warning on the substance could have been affixed within the scope of their obligations.

There is a *second* type of failure to warn case, however, and this matter is one of those. As for Electric Boat, this case is a "premises liability" case. In other words,

the plaintiffs maintain that Electric Boat controlled the *premises* on which the work was done (unlike work done physically on Navy property) and therefore it could have posted warnings on its *premises* if not directly upon the offending containers of asbestos-contaminated substances.[6] To come within the "under color" umbrella with regard to premises liability, Electric Boat must sustain its burden of showing that the regulations and terms under which it was awarded the contract precluded such warnings on its own *premises*. *Sether,* 2008 WL 1701172, at *4 (General Electric failed to show the Navy's direction left it no way to satisfy its state law duty to warn). The distinction between the "product" and the "job site" is an important one. In *Overly*, 1996 WL 532150, at *1, the plaintiff worked in a shipyard controlled by Avondale Industries. He contracted mesothelioma from asbestos exposure and sued for failure to warn. While Avondale was, the court recognized, under "substantial control by the government regarding the installation of certain products containing asbestos," it was not constrained by similar directives with respect to control of the job site itself. *Id.* at *3. Granting remand, the court concluded that nothing in the

---

[6] The plaintiffs have made clear that the core of their complaint is the failure of Electric Boat to post or otherwise publish warnings at the worksite that the environment presented a risk of dangerous asbestos exposure. *E.g.*, "[the Navy] had no specifications for Electric Boat's handling of safety and warnings on its premises" (ECF No. 15 at 2), "Plaintiffs have alleged that Mr. Moore was exposed to asbestos on the premises without adequate safeguards and without warnings about the dangers of asbestos contamination on the premises." *Id.* "Electric Boat is being sued as a premises owner …." *Id.* at 5. The crafting of the Complaint as a "premises liability" one distinguishes this case from those such as *Beckwith v. General Elec. Co.*, No. 3:09CV0216 (AWT), 2010 WL 1287095 (D. Conn. Mar. 30, 2010) and *Boston v. Eastern Refractories Co., Inc.*, No. 07-63993, MDL 875, 2010 WL 11575240 (E.D. Pa. Aug. 30, 2010). *Beckwith* involved asbestos associated with a product (pumps), not premises, as did *Boston,* which apparently involved turbines insulated with asbestos.

7

materials submitted by Avondale precluded it from notifying individuals of the presence of asbestos in the work environment. *Id.* at *4.

A similar conclusion was reached in *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653 (E.D. Tex. 1999). There, the plaintiffs complained that their worksites, various facilities owned by the defendants in Texas and Louisiana, failed to contain warnings of asbestos on the premises. Distinguishing failure to warn cases in which the asbestos was contained on *products* supplied by the defendants, the court noted the focus in a "premises liability" case is on the *facility* controlled by the defendants. Nothing in the federal regulations prevented the defendants "from taking their own safety precautions heeding state-law standards above the minimum standards incorporated in their federal contracts." *Id.* at 663.

Electric Boat maintains this is not really a "premises liability" case–that the plaintiffs have merely attached that label to what is otherwise a product liability and negligence case to avoid the strictness of the Navy's control over materials-based warnings; that strictness, Electric Boat maintains, tied its hands, and eliminated its discretion to warn. But characterizing the Complaint that way does not make it so[7] and the plaintiffs made clear in their Complaint that the theory of liability against Electric Boat derives from Electric Boat's control of the worksite itself. (ECF No. 1, ¶¶ 52-53.)

In a premises liability case, the focus on *worksite* warnings bleeds analytically into the nexus between the actions by the defendants and the cause of the injury. The

---

[7] *See* n.1.

product and the premises are not the same: the product is not the "facility." *Id.* at 662. Even were there a direct prohibition on warnings placed on the former, that would not have precluded effective warnings on the latter. The defendants' attempt to "transmogrify their entire facilities (*i.e.*, their premises) into 'products' misapplies precedent and fails the second prong of the *Mesa* [*v. California*, 489 U.S. 121 (1989)] test." *Id.* at 660. Electric Boat attempts the same sleight-of-hand, discussed below.

### B. Electric Boat's Averments

Against the twin requirements of "acting under" and "causal connection," the Court must measure the adequacy of Electric Boat's proffered evidence. Electric Boat maintains and has submitted proof through affidavits and instructional materials, that the Navy so tightly controlled the products used in the construction of the submarines, and the warnings affixed to materials, that it could not have substituted warnings of its own or even supplemented the Navy's labeling with warnings about asbestos. (ECF Nos. 16-1—16-9.) It relies primarily on the affidavits of two witnesses: Bradford Heil, corporate representative for Electric Boat, and Admiral John B. Padgett, a former Commander who had "served aboard Benjamin Franklin-class nuclear submarines like the *USS Francis Scott Key* during his naval service." (ECF No. 16 at 3.) *See also depositions,* (ECF Nos. 15-1, 15-2). Admiral Padgett ultimately became a Vice-President at Electric Boat. (ECF No. 16-2 at 4.)

The problem is that Electric Boat's materials, substantive and comprehensive as they are, fail to address the premises theory of liability. They represent that the Navy produced voluminous manuals and instructions with respect to products used

9

in the fabrication, maintenance, repair, and overhaul of the vessels themselves. Commander Padgett detailed the specifications, known as "MilSpecs" that brooked no deviation or variation in equipment or parts. (ECF No. 16-2 at 6.)

The documentation that the defendants need to defend removal, is support for the proposition that the Navy's specifications for Electric Boat were so detailed, and its directions so specific, that it left little or no room for Electric Boat to comply with its state-imposed obligations. *E.g.*, *Winters,* 149 F.3d at 400 (specifications for mixing Agent Orange were so detailed that defendant could not comply with them and still eliminate toxic trace of dioxin). That showing would demonstrate that the Navy controlled the *warnings* at the shipyard itself, to such an extent as to preclude Electric Boat from fulfilling its duty to warn. "In the context of a claim of failure to warn such as is asserted against G[eneral] E[lectric] in this case, the removing defendant must establish that the government's control over warnings directly interfered with the defendant's ability to fulfill its state law obligation to warn of safety hazards." *Sether,* 2008 WL 1701172, at *2 (granting remand); *Overly,* 1996 WL 532150, at *4 (showing of Avondale's control over installation specifics did not demonstrate such control over warnings of jobsite exposure).

Electric Boat hints at such control in the section of Commander Padgett's Affidavit entitled "Navy's Approach to Hazard Communications" (ECF No. 16-2, ¶¶ 52–60), but, contrary to the promise in the title, the averments do not support even an implication that warnings on the premises, or warnings *about* the premises, would conflict with the Navy's own communications protocol. The affidavit then

states that Electric Boat could not have affixed a warning on a "warship." *Id.* ¶ 75. Again, Electric Boat seeks to equate the product with the workplace. The plaintiffs' complaint is not that Electric Boat failed to affix adequate warnings to the ships, but that it failed to meet its duty to adequately warn on the property it owned and controlled. The section of the Padgett Affidavit that held the most promise was that in which it alleged that Electric Boat "functioned as a Navy Shipyard." *Id.* ¶¶ 32-39. But nothing in those paragraphs even implied, much less demonstrated, that in Navy Shipyards adequate warnings were prohibited.[8]

Contrary to the testimony in *Winters,* for example, there is no support here for the proposition that the Navy prohibited workplace warnings. *See Winters,* 149 F.3d at 401.[9] There were no restrictions identified on Electric Boat's ability to notify individuals of the risk of, and danger presented by, exposure to asbestos in the workplace. Without that showing, the causal connection is not demonstrated.

---

[8] The manuals and technical specifications provided by the defendants as exhibits similarly do not make a claim to exclusivity, precluding supplement by Electric Boat, particularly on its premises. *See, e.g.*, ECF No. 16-6. They are extensive, however, and perhaps when Electric Boat is allowed to defend on the merits it may be able to show that Mr. Moore received ample warnings of the hazards involved in his employment. But the merits are not before this Court and, because of this Order, will not be.

[9] While the defendants need not point to a specific regulation prohibiting them from warning appropriately, they need to support the proposition that the Navy "would not have permitted" additional warnings by something more than speculation. They must make some showing that an attempt to add warnings was blocked in the past or that there was some contractual provision inconsistent with additional warnings. *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 202-03 (D. Mass. 2008) (the claim that had they made an attempt the government would have rejected it "is not remotely adequate"). *Accord Holdren,* 614 F. Supp. 2d at 145 (rejecting "hypothetical approach" because of vagueness of supporting materials).

*Overly,* 1996 WL 532150, at *4 (granting remand). *Accord Faulk,* 48 F. Supp. 2d at 663 (holding that in a premises liability case, the showing must concern ability to warn at the *facility*, not merely on product packaging, to demonstrate the causation nexus).[10]

## V. CONCLUSION

Electric Boat, as the proponent of removal, has not met its burden under 28 U.S.C. § 1442. The Court therefore GRANTS the plaintiffs' Motion to Remand (ECF No. 15). This matter is remanded to the Superior Court of Rhode Island sitting in Providence, for the counties of Providence and Bristol.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
July 1, 2021

---

[10] *See Faulk,* 48 F. Supp. 2d at 670 (rejecting defendants' attempt to "shroud their entire *facilities* from state-law claims simply because the federal government-controlled *products* manufactured there") (emphasis in original).